```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                       JACKSONVILLE DIVISION
```

UNITED STATES OF AMERICA

v.                                        Case No. 3:07-cr-90-J-33HTS

DONALD E. TOUCHET,
RICHARD E. STANDRIDGE, and
ROBERT J. JENNINGS
_____/

### ORDER

This cause comes before the Court pursuant to two motions filed by Touchet and Jennings on February 25, 2008. (Doc. # 336; Doc. # 337.) Both defendants seek a new trial or a judgment of acquittal. The government filed a response on March 4, 2008. (Doc. # 340.) For the reasons that follow, both motions are DENIED.

**I.   Background**

After a lengthy jury trial, Touchet and Jennings were both convicted of conspiracy to commit mail fraud, wire fraud, and money laundering; as well as several substantive offenses. (Doc. # 329; Doc. # 330.) These convictions stemmed from their participation in a widespread scheme to sell sham workers' compensation insurance. Both defendants timely filed their motions for new trial or judgment of acquittal within seven days after the jury's guilty verdicts.

Touchet raises four basic arguments in his motion: (1) the

evidence was insufficient to convict him, or the jury's guilty verdict was against the weight of the evidence; (2) the Court erred in its response to the government's failure to disclose pending criminal charges against a government witness; (3) the Court erred in denying a mistrial based on a government witness' inappropriate comments; and (4) the Court erred in excluding one of Touchet's exhibits. (Doc. # 336.) Jennings makes essentially six challenges to the trial: (1) the evidence was insufficient to convict him, or the jury's guilty verdict was against the weight of the evidence; (2) the Court erred by refusing to allow Jennings to present evidence of his medical condition; (3) the Court's instructions to the jury on the conspiracy offense were ambiguous; (4) the Court erred in refusing to sever Jennings' trial from that of his two co-defendants; (5) the Court limited Jennings' ability to cross-examine a government witness on that witness' credibility in violation of Jennings' right of confrontation; and (6) the Court's instruction to the jury on deliberate ignorance was erroneous. (Doc. # 337.)

Additionally, Jennings argues, "The Court erred in ruling in favor of the government to the admission of certain exhibits at trial and overruling the Defendant's objections to certain testimony of Government's witnesses." (Doc. # 337, at 2.) Jennings does not explain what exhibits and testimony he believes the Court erroneously admitted. In fact, it appears this argument

is a misplaced attempt to preserve any possible error for appellate review.[1]  In any case, the Court is confident, in general, that its rulings on Jennings' objections were correct.  In the absence of so much as identification of specific challenged rulings, the Court declines to grant a new trial on this ground.  After examining the standard of decision, the Court addresses the defendants' remaining arguments.

**II.  Standard of Decision**

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33.  Additionally, the court may set aside a guilty verdict and enter a judgment of acquittal.  Fed. R. Crim. P. 29(c)(2).

Where a motion for judgment of acquittal attacks the sufficiency of the evidence, the court "must view the evidence in the light most favorable to the government, and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt."  United States v. Molina, 443 F.3d 824, 828

---

[1]Jennings explains, "It is axiomatic that failure to raise an issue, including a constitutional issue[], in a written [m]otion for [n]ew [t]rial constitutes waiver of that issue[,] and it cannot be urged as grounds for reversal on review."  (Doc. # 337, at 1.)  The Court is unfamiliar with this axiom, and Jennings has not cited an authority stating it.  The Court's own research reveals that a defendant may be able to preserve an error through a motion for new trial, even though the defendant did not object at trial, United States v. Schilleci, 545 F.2d 519, 525 n.1 (5th Cir. 1977), but the Court has not found authority for the axiom Jennings states.

(11th Cir. 2006) (quoting United States v. Miranda, 425 F.3d 953, 959 (11th Cir. 2005)).  This is a question of law.  Id.

In the related situation where a motion for new trial attacks the jury's verdict as against the weight of the evidence, though, the standard is different.  See Butcher v. United States, 368 F.3d 1290, 1297 n.4 (11th Cir. 2004) (noting difference between standards).  Rather than presenting a question of law, "[a] motion for a new trial is addressed to the sound discretion of the trial court."  United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985).  The court may "weigh the evidence and consider the credibility of witnesses."  Id.; accord United States v. Cross, 258 F. App'x 259, 261 (11th Cir. 2007).  "If the court concludes that . . . the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury."  Martinez, 763 F.2d at 1312 (internal quotation marks omitted); accord Cross, 258 F. App'x at 261.  The court may follow this course even if the evidence is legally sufficient to sustain the verdict.  Martinez, 763 F.2d at 1312; accord Cross 258 F. App'x at 261; see also Butcher, 368 F.3d at 1297 n.4 ("In a proper case -- a case in which the evidence of guilt although legally sufficient is thin and marked by uncertainties and discrepancies -- there is room between the two standards for a district court to reweigh the evidence and

4

reevaluate the credibility of witnesses." (internal quotation marks and citation omitted)).  However, the Eleventh Circuit has stated that "[a] motion for new trial must be viewed with 'great caution.'" United States v. Reed, 887 F.2d 1398, 1404 (11th Cir. 1989) (quoting United States v. Hall, 854 F.2d 1269, 1271 (11th Cir. 1988)).

Where a motion for new trial argues that the court committed errors during the trial, "the convicted defendant has the burden of showing that (1) some error was in fact committed and (2) that such error was prejudicial to him."  United States v. Simms, 508 F. Supp. 1188, 1203 (W.D. La. 1980); accord United States v. DeLaughter, No. 8:07-cr-201, 2007 WL 3034645, at *1 (M.D. Fla. Oct. 16, 2007).  Even if the defendant has made such a showing, a new trial is not warranted unless the error affected the defendant's substantial rights.  Simms, 508 F. Supp. at 1203; accord DeLaughter, 2007 WL 3034645, at *1; see also Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").  "An error affects the defendant's substantial rights if it probably had a substantial influence on the jury's verdict."  United States v. Rodriguez, 259 F. App'x 270 (11th Cir. 2007) (internal quotation marks omitted) (quoting United States v. Stephens, 365 F.3d 967, 976–77 (11th Cir. 2004)).  The court must inquire whether the error "was more likely than not a substantial factor" in the conviction.  See Stephens,

365 F.3d at 980 (remanding for new trial after concluding that district court's evidentiary error "was more likely than not a substantial factor in [the defendant's] conviction").

### III. Discussion

#### A. Sufficiency and Weight of the Evidence

Touchet and Jennings both argue that there was insufficient evidence to convict them of the conspiracy charge. Touchet also argues that there was insufficient evidence to convict him of any of the substantive offenses of which he was found guilty. In addition to challenging the sufficiency of the evidence to support his conspiracy conviction, Jennings also submits that his money laundering conviction was founded on insufficient evidence. As discussed above, the Court must view the evidence in the light most favorable to the government and determine whether, as a matter of law, a reasonable jury could have found Touchet and Jennings guilty beyond a reasonable doubt.

Citing <u>United States v. Correa-Tobon</u>, 748 F.2d 1509 (11th Cir. 1984), the government first argues that the defendants waived any argument as to the sufficiency of the evidence because they chose to present their own evidence. (Doc. # 340, at 1.) This argument has no merit. What a defendant waives by putting on his own case is the right to challenge the sufficiency of the evidence <u>as it existed before he put on his own case</u>. <u>United States v. Martinez</u>, 96 F.3d 473, 476 (11th Cir. 1996). A defendant who puts on

evidence may still challenge the sufficiency of the evidence, but a court will evaluate that challenge based on all the evidence in the case, including evidence the defendant himself presented. United States v. Brown, 53 F.3d 312, 314 n.3 (11th Cir. 1995). Thus, "a defendant who chooses to present a defense runs a substantial risk of bolstering the Government's case." Id. at 314. Such a defendant does not, however, run the risk of conviction on evidence insufficient as a matter of law.  Accordingly, by putting on their own evidence at trial, Touchet and Jennings waived any challenge made to the Court's denial of their motions for judgment of acquittal made at the close of the government's case.  However, they did not thereby waive their right to challenge the sufficiency of the evidence in its entirety.

Touchet argues the evidence was insufficient "for the reasons articulated at trial" (Doc. # 336, at 3), and Jennings argues that the Court should enter a judgment of acquittal "for the reasons described at trial" (Doc. # 337, at 1).  Additionally, both defendants merely state that the evidence was insufficient to show that the financial transactions during the course of the conspiracy furthered a substantive offense.  Faced with these very general arguments, the Court declines to comb the record and list all the evidence that supported each element of each offense on which these defendants were convicted.  Instead, the Court states simply that the evidence was more than merely sufficient.  Moreover, the Court

observes that there was ample evidence in the record to support the jury's verdict that the financial transactions were intended to, and did, further the substantive offenses alleged in the indictment. As a result, judgments of acquittal are not warranted.

The defendants' arguments as to the weight of the evidence are similarly general. The Court heard all the evidence at this trial and now determines that the evidence does not preponderate against the jury's verdicts. Consequently, a new trial is unwarranted.

**B.     Cross Examination of Government Witness Tom Brown**

One of the government's key witnesses in this trial was Tom Brown. During the trial, it came to light that federal criminal charges were then pending against Brown in the U.S. District Court for the Central District of California. The government did not disclose this fact to the defense prior to trial. Both Touchet and Jennings made oral motions based on this circumstance. The Court entered a written order explaining that the government's omission did not violate these defendants' due process rights because there was no reasonable probability that an earlier disclosure of this evidence would have had any significant effect on this trial. (Doc. # 286, at 4.)

Touchet now maintains that the Court erred in not dismissing the case or declaring a mistrial as a result of the government's failure to disclose the charges pending against Brown. Jennings now argues,

> The Court erred in precluding the [d]efendant[']s ability to cross-examine a critical government witness, with respect to matters highly pertinent to impeach the government's main witness, Tom Brown's credibility, thereby depriving Mr. Jennings of his right to fully confront and cross-examine the government's main witness as guaranteed by the Sixth Amendment.

(Doc. # 337, at 2.)  This is the extent of Jennings' discussion on this topic.  In the absence of further explanation, the Court can only conclude that Jennings means to challenge the Court's ruling on the matter of the nondisclosure of the charges pending against Brown.

As the Court explained in its order, neither a mistrial nor any other remedy was warranted by the government's failure to disclose the charges pending against Brown.  During the trial, Touchet and Jennings argued that the pending charges amounted to favorable defense evidence that should have been disclosed under a line of authorities including Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972).  Favorable defense evidence falls within the rule articulated by these cases only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Youngblood v. West Virginia, 547 U.S. 867 (2006) (internal quotation marks omitted).  The defendants discovered the charges pending against Brown and used that information in cross-examination.  Thus, the Court concluded at the time that there was no reasonable probability that

9

an earlier disclosure of this evidence would have had any significant effect on this trial. (Doc. # 286, at 4.) The Court now reaffirms that conclusion. A new trial is not warranted.

### C. Tom Brown's Inappropriate Comments

Touchet argues that the Court erred by not declaring a mistrial in response to Brown's "repeated unsolicited statements about his conspiracy with the defendants to commit the crimes alleged." (Doc. # 336, at 2.) During his testimony, Brown did make several inappropriate and nonresponsive comments. For example, Brown prefaced his answers to questions on cross-examination with comments like, "During the time I conspired to commit mail fraud with your client . . . ."[2] The Court remembers cautioning Brown to answer the questions and refrain from making nonresponsive comments. The Court also remembers giving curative instructions. The Court's response was therefore not error. However, even if the Court allowed some inappropriate comments to go unaddressed or gave too weak a curative instruction, the Court finds that Brown's inappropriate comments could have had no substantial influence on the jury's verdict. In short, even if there was error, the error did not prejudice Touchet. For that reason, a new trial is not warranted.

---

[2] The Court does not quote the record here, but merely offers what may be an imperfect memory of Brown's comments. Regardless of whether these were the exact words Brown used, they accurately capture the nature of Brown's comments.

10

### D.  Exclusion of Touchet's Exhibit 7

Touchet objects that the Court excluded his exhibit 7.  This exhibit was a printout from a Florida Department of Insurance website summarizing "the number of excess/surplus line workman's compensation policies issued in Florida in 2001."  (Doc. # 336, at 2-3.)  Touchet offered the exhibit to corroborate his testimony that "he believed it did not violate statutes and regulations governing insurance to sell excess/surplus line workman's compensation insurance in 2001."  (Doc. # 336, at 3.)  The government objected on the grounds that the exhibit was irrelevant and that the risk of confusing the jury substantially outweighed any possible probative value the exhibit might have.  The government explained that the printout was dated in 2006, after the end of the conspiracy charged in the indictment.  Thus, the exhibit could not show what Touchet may have known during the time of the conspiracy.  After argument from the government and Touchet at sidebar, the Court determined that the exhibit was irrelevant.  The Court also found that the risk of confusing the jury substantially outweighed any relevance the exhibit might have.  The Court excluded the exhibit.

The Court's ruling was not error.  This document was offered to show that Touchet believed during the time of the conspiracy that it was legal for a non-admitted insurance carrier to sell excess- or surplus-line workers' compensation insurance.  But the

11

document was created after the conspiracy ended. Accordingly, the document could not possibly have led Touchet to believe or to disbelieve anything during the conspiracy. The Court's relevancy ruling was not error, and a new trial is not warranted on this ground.

**E.   Exclusion of Jennings' Medical Condition**

Jennings argues, "It was error for the Court to deny the right to present evidence of Mr. Jennings['] medical condition after the government opened the door regarding Mr. Jennings['] memory problems." (Doc. # 337, at 2.)

Before this trial, Jennings was diagnosed with cancer and was prescribed various medications. After seeking the opinion of one of Jennings' physicians, the Court determined that it was reasonable to proceed with this trial as scheduled.[3] On the eve of trial, the government filed a motion in limine seeking to preclude the defendants from providing the jury information on the defendants' current medical conditions. (Doc. # 225.) The government argued that such information would not be relevant, and that the unfair prejudice of such information would substantially outweigh its probity if it were relevant. The Court granted the

---

[3]The Court asked Jennings' physician whether it was medically reasonable to delay Jennings' treatment until the end of the trial. (Doc. # 190, at 2.) The physician responded, "It is not unreasonable for Mr. Jennings to delay his treatment until March 2008 if he has other very pressing things to do, such as his trial." (Doc. # 226-2, at 2.)

12

government's motion by oral order.  (Doc. # 249.)

During its cross-examination of Jennings, the government asked Jennings if he had a memory problem.  This question was asked somewhat sarcastically after Jennings gave a series of equivocal answers to government questions. Jennings answered the question in the negative.  That notwithstanding, Jennings later argued that the government's question opened the door to Jennings putting on evidence of his medical condition and the medications he was taking.  The Court determined that the question did not open the door.  Instead, it was the same question that would have been asked during the cross-examination of any witness whose answers were frequently qualified by statements about the uncertainty of his memory.  Therefore, the Court prohibited Jennings from putting on testimony about his medical condition on redirect examination.

The outcome would have been different, of course, had Jennings responded to the government's question by stating that he did in fact have a memory problem.  In such a case, the government would have been stuck with the answer to its own question, and Jennings would have been permitted to elaborate on that answer on redirect. But Jennings stated that he did not have a memory problem.  For that reason, the question and answer did not create a need for exploration of Jennings' medical difficulties.  Jennings' medical difficulties remained irrelevant.  It was therefore not error for the Court to continue to exclude evidence of Jennings' medical

13

condition. Consequently, a new trial is not warranted on this ground.

**F.   Jury Instructions**

Jennings submits that the Court made two errors in its instructions to the jury. Jennings' first argument, in its entirety is, "The Court erred by submitting all of the [g]overnment's proposed jury instructions which created ambiguity. But for the ambiguity of the government's instructions on whether Mr. Jennings conspired, the result of the proceeding probably would have been different." (Doc. # 337, at 2.) It appears that Jennings attacks the instructions on conspiracy, but he does not describe the ambiguity he sees in the jury instructions. The Court sees none. Indeed, the Court's instruction on conspiracy was identical to the Eleventh Circuit pattern instruction on conspiracy. Accordingly, there was no error in the instructions, and a new trial is not warranted on this ground.

Jennings second argues that, "The Court erred in instructing the jury, over Mr. Jennings' objections, with respect to deliberate ignorance." (Doc. # 337, at 2.) Jennings does not explain why it was error to instruct the jury on deliberate ignorance. The Court notes, though, that the Eleventh Circuit has cautioned against an overly liberal use of the deliberate ignorance instruction. United States v. Rivera, 944 F.2d 1563, 1570 (11th Cir. 1991). Thus, the "instruction is appropriate only when there is evidence in the

14

record 'showing the defendant purposely contrived to avoid learning the truth.'" United States v. Stone, 9 F.3d 934, 937 (11th Cir. 1993) (quoting United States v. Barbee, 968 F.2d 1026, 1033 (10th Cir. 1992)).  In this case, there was ample evidence showing that Jennings and his co-defendants purposely contrived to avoid learning the truth.  As a result, it was not error to instruct the jury on deliberate ignorance, and a new trial is not warranted on this ground.

**G.   The Court's Refusal to Sever Jennings' Trial**

Jennings argues that it was error for the Court not to sever his trial from that of his co-defendants.  (Doc. # 337, at 2.) Federal Rule of Criminal Procedure 8(b) allows co-defendants to be tried jointly "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b).  Even where a joint trial is proper under Rule 8(b), Rule 14 allows the district court to sever the trial if either the defendant or the government would be prejudiced by a joint trial. Fed. R. Crim. P. 14.  However, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993).  Such trials promote efficiency and avoid inconsistent results. Id.  Accordingly, Rule 14 does not require severance in all cases where prejudice is shown. Id. at 538-39.  Instead, the rule "leaves the tailoring of

15

the relief to be granted, if any, to the district court's sound discretion." Id. at 539.

When presented with an argument that severance is required, district courts must conduct a two-step evaluation. See United States v. Blankenship, 382 F.3d 1110, 1122 (11th Cir. 2004) (explaining that reviewing court must undertake this analysis in response to argument that defendant is entitled to new trial as result of failure to sever the original trial). The first step is to determine whether the joint trial prejudiced the defendant. Id. And the second is to fashion the appropriate remedy. Id. Severance is the appropriate remedy only where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539.

Jennings has not explained what prejudice he suffered as a result of the joint trial. Further, Jennings has not identified any specific trial right that was compromised by the joint trial in this case, and he has not argued that the joint trial prevented the jury from making a reliable judgment about guilt or innocence. The Court's own recollection of this trial does not reveal any specific trial right belonging to Jennings that was arguably compromised by the joint trial. Additionally, there is no risk greater than that inherent in human institutions that the joint trial prevented the jury from making a reliable judgment in this case. Consequently,

a new trial is not warranted by the Court's refusal to sever Jennings' trial from that of his co-defendants.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

1. The Motion for New Trial, or Judgment of Acquittal (Doc. # 336), filed by Touchet, is hereby **DENIED**.

2. The Motion for a New Trial (Doc. # 337), filed by Jennings, is hereby **DENIED**.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 9th day of May 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record