**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA,

v.                                                                              Case No.: 3:07-cr-90-J-33HTS

JERRY M. BREWER, *et al*.
_____/

## ORDER

The Receiver's Motion and Memorandum Seeking Approval of Private Sale of Receivership Property (the "Motion," Doc. 532) is before the Court on the terms and conditions set forth in the Motion, and the subsequent Order entered by this Court on May 12, 2009 (the "Hearing Order," Doc. 541).

Arguments of counsel having been heard and the Court otherwise being fully advised in the premises, the Court now makes the following findings of fact and conclusions of law:

### BACKGROUND

1.      On or about December 21, 2007, the Court appointed Phillip S. Stenger as Receiver (the "Appointing Order," Doc. 163) for certain real and personal property derived from participants in the worker's compensation insurance fraud scheme that forms the basis of this action and related criminal prosecutions, including, in pertinent part, certain property formerly forfeited by Defendant, Michael Lee McCafferty ("McCafferty") in the related case of <u>United States of America v. Michael Lee McCafferty</u>, Case No.: 3:06-cr-305-J-33MCR

(the "Receivership Assets").[1] The Receiver was authorized to take and have possession of the Receivership Assets for the benefit of victims of the fraudulent scheme.

2. The Receivership Assets include McCafferty's interest in a property commonly known as Unit No. D-9, of Cluster D, Rough Creek Villas, a Condominium, located at 9867 Sawgrass Drive East, Ponte Vedra Beach, County of St. Johns, State of Florida (the "Property").[2] Title to the Property was formerly held in the name of The Dublin Group, Inc., a Florida corporation. McCafferty, as President of The Dublin Group, Inc., conveyed the Property to the Receiver via Quit Claim deed dated April 8, 2008, which was duly recorded by the Receiver on May 12, 2008 (Ex. D, Doc. 532-5).

3. The Receiver entered into an Agreement for Private Purchase and Sale of Real Property" (the "Private Sale Agreement") on April 28, 2009 (Ex. E, Doc. 532-6) for the sale of the Property to Kevin C. Seramur and Maria P. Seramur ("Mr. and Mrs. Seramur") for the sum of U.S. $167,000. Pursuant to the terms of the Private Sale Agreement, Mr. and

---

[1] On January 15, 2008, the McCafferty Court entered an Order dismissing the Final Judgment of Forfeiture for Substitute Assets previously entered against McCafferty in that case and directing the United States Marshals Service to release McCafferty's assets to the Receiver for liquidation.

[2] The Property is legally described as:

> Unit No. D-9, of Cluster D, Rough Creek Villas, a Condominium, according to the Declaration of Condominium as recorded in Official Records Volume 247, Page 1, as amended by Amendments to Declaration of Condominium in Official Records Volume 247, Page 360, Official Records Volume 387, Page 507, and Official Records Volume 390, Page 361 of the Public Records of St. Johns County, Florida, and any other amendments thereto, together with an undivided 1/60 interest in the common elements appurtenant thereto.

Mrs. Seramur have paid the Receiver (Seller) the sum of US $25,000, which represents the Initial Deposit. The Receiver must return that Initial Deposit to Mr. and Mrs. Seramur if they are not confirmed by the Court as the purchasers of the Property. The Private Sale Agreement is expressly contingent upon, among other things, the approval of the sale by the Court and upon the Court's approval of a listing agreement dated April 28, 2009, that the Receiver entered into with RE/MAX Unlimited, Inc. (the "Listing Agreement") (Ex. F, Doc. 532-7).

4. In the Motion, the Receiver requested authority to conduct a private sale of the Property on the terms and conditions and utilizing procedures set forth in the Motion, so as to grant the purchaser, except as provided by this Court or in the Private Sale Agreement or Judicial Sale Agreement, as applicable, good and clear title as against the world, free and clear of all liens, encumbrances, costs, claims and interests of any kind, with such liens, encumbrances, costs, claims and interests, if any, to attach to the sale proceeds, except as to such liens, encumbrances, costs, claim and interests as the Receiver is directed by this Court to satisfy at the closing of the sale of the Property or subject to which the purchaser has agreed to accept title to the Property.

5. The provisions of 28 U.S.C. §2001(b) (the "Statute") govern the private sale of real property by the Receiver. The Statute provides, in relevant part, that such a private sale may be confirmed by the Court after a hearing with notice to all interested parties as the Court directs, upon a finding by the Court that the best interests of the Estate will be conserved by the sale. Before confirmation of the sale, the Court must appoint three (3)

disinterested persons to appraise the Property; and the Court shall not approve a sale that is less than two-thirds of the average appraised value of the Property. At least ten (10) days prior to confirmation of the sale, the terms of the private sale must be published in a newspaper or newspapers of general circulation as the Court directs. Under the Statute, the Court is to prescribe the conditions under which other *bona fide* offers for the Property may be made.

6. In the Hearing Order, this Court granted the requested authority to the Receiver, and reviewed and confirmed that the actions taken to date by the Receiver regarding the Property complied with the requirements of 28 U.S.C. §2001(b), including the "prior notice" requirement that all interested parties be given notice of the proposed sale prior to confirmation; the requirement that three (3) disinterested persons appraise the Property; and the requirement that the Appraisals confirm that the sale price for the Property (U.S. $167,000) listed in the Private Sale Agreement is in excess of the two-thirds (U.S. $147,778) of the average appraised value of the Property (U.S. $221,667). See the Hearing Order, Doc. 541, n.5, p. 4). The Hearing Order also approved, ratified and confirmed the Listing Agreement entered into by the Receiver (subject to the approval of the Court) with RE/MAX Unlimited, Inc. (Ex. F, Doc. 532-7).

7. The Hearing Order also set the date, time and place for the hearing to confirm the proposed private sale subject to satisfaction of the requirements of the Statute (the "Telephonic Confirmation Hearing"), to occur on Tuesday, June 16, 2009, at 1:30 P.M. Eastern Standard Time, in Courtroom 14B in the United States Courthouse, United States

District Court for the Middle District of Florida (Tampa Division), 801 North Florida Avenue, Tampa, Florida 33602; and prescribed the conditions under which other *bona fide* offers for the Property might be made at the Telephonic Confirmation Hearing.

8. The Hearing Order further:

   A. Directed the Receiver, pursuant to 28 U.S.C. §2001(b), to specifically notify McCafferty as an interested party of the private sale; and

   B. Directed the Receiver, pursuant to 28 U.S.C. §2001(b), to publish one or more notices of the Publication Notice in a form substantially similar to that attached to the Motion (Ex. A, Doc. 532-2), but including the date and time for the Telephonic Confirmation Hearing set forth in the Hearing Order in a newspaper or newspapers of general circulation, including *The Florida Times-Union* of Jacksonville, Florida, at least ten (10) days prior to the Hearing, and in such publications, if any, as the Receiver in his sole discretion determines to be in the best interests of the Estate, and to take such further steps as he deems appropriate to advertise or promote the sale.

9. This Court held the Telephonic Confirmation Hearing at the date, time and place set forth in the Hearing Order. Counsel for the Receiver was present at the Telephonic Confirmation Hearing via telephonic conference. The Receiver and Mr. and Mrs. Seramur were also present at the Telephonic Confirmation Hearing via telephonic conference. As provided in the Statute and Hearing Order, an opportunity was granted at the Hearing to present other *bona fide* offers for the Property. No one appeared in order to bid or otherwise

contest the proceedings at the Telephonic Confirmation Hearing. Accordingly, no bids were submitted.

10. The Receiver established to the satisfaction of the Court, and the Court finds and concludes, that proper notice of the Telephonic Confirmation Hearing had been given to McCafferty as required by the Hearing Order and the Statute. The Receiver also established to the satisfaction of the Court, and the Court finds and concludes, that notice of the terms of the private sale in a form substantially similar to that attached as Exhibit A to the Motion was published in the Sunday edition of *The Florida Times-Union* of Jacksonville, Florida, on Sunday, May 31, 2009, and in the Saturday edition of *The Shorelines* of Jacksonville, Florida, on Saturday, June 6, 2009, at least ten (10) days prior to the Telephonic Confirmation Hearing, as required by the Hearing Order and the Statute (the "Required Publication"). The Court further finds and concludes that such publication and service not only satisfy the requirements of the Hearing Order and the Statute, but further constitute reasonable, proper, sufficient and effective efforts on the part of the Receiver to give prospective bidders notice of the proposed sale of the Property and to secure the best possible price for the sale of the Property. The Receiver also established to the satisfaction of the Court that he, through his broker, used diligent efforts to market the Property so as to secure the best possible price for the Property and the steps taken by the Receiver to sell and market the Property are commercially reasonable and the marketing efforts have been conducted in a manner most likely to achieve the type and level of competitive bidding and sale deemed most beneficial to the Estate.

11. No objection to the proposed private sale of the Property has been filed with the Court and no one has filed with or otherwise notified the Court of any interest in the Property, including presenting an alternate *bona fide* offer for the Property as provided in the Statute. Upon inquiry, it was determined that no prospective bidders for the Property were present at the Telephonic Confirmation Hearing, nor did anyone present at the Telephonic Confirmation Hearing object to the proposed private sale of the Property or otherwise claim an interest in the Property and that the proposed sales price under the Private Sale Agreement is well in excess of two-thirds of the average appraised value of the Property. Accordingly, the Court finds and concludes that the private sale of the Property to Mr. and Mrs. Seramur pursuant to the terms of the Private Sale Agreement:

- A. Satisfies all requirements of the Statute and otherwise complies with all legal requirements;
- B. Is well in excess of the statutorily-required two-thirds of the average appraised value of the Property;
- C. Is commercially reasonable and represents the reasonable fair market value of the Property; and
- D. Conserves the best interests of the Estate.

12. The Court hereby finds and concludes that the private sale of the Property to Mr. and Mrs. Seramur pursuant to the terms of the Private Sale Agreement, should be and, is hereby, confirmed and approved by the Court; that, subject to the terms of the Private Sale Agreement, the Receiver has agreed to sell, and Mr. and Mrs. Seramur have agreed to buy,

the Property; and that the Receiver and Mr. and Mrs. Seramur are directed to close such sale in the manner provided in the Private Sale Agreement and as set forth in this Order.

      13      The Court finds that certain liens, costs and encumbrances, set forth on Exhibit A to this Order (which is hereby incorporated herein by reference), exist against the Property which, under the Private Sale Agreement, must be paid by Seller (Receiver) from the sale proceeds at the Closing of the sale of the Property; and that the Receiver, his attorneys, agents and employees are not liable for payment of any other liens, costs and encumbrances, including payment of any broker's commissions not specifically listed on Exhibit A to this Order. The Court hereby authorizes and directs the Receiver, and finds and concludes, as follows:

         A.      The Receiver is authorized to pay at closing of the sale of the Property, out of the proceeds of the sale of the Property, all liens, costs and encumbrances which, under the terms of the Private Sale Agreement, are an obligation of the Seller (Receiver), including, without limitation, those liens, costs and encumbrances listed on Exhibit A to this Order. The Receiver is further authorized to pay out of such proceeds all other liens, encumbrances, commissions, costs, or claims, if any, which have been incurred by the Receiver in connection with the maintenance and/or sale of the Property, whether or not such liens, costs and encumbrances are listed on Exhibit A to this Order.

B.  The Court finds and concludes that Mr. and Mrs. Seramur have agreed to take title to the Property by way of a Quit Claim deed, and subject to the terms of the Private Sale Agreement.

14. The Court finds and concludes that following the closing of the sale of the Property as provided above, and except as provided in this Order or in the Private Sale Agreement, Mr. and Mrs. Seramur shall hold good and clear title to the Property as against the world, free and clear of all liens, encumbrances, claims and interests of any kind.

15. Except as otherwise provided in this Order and the Private Sale Agreement, liens, encumbrances, costs, claims and interests, if any, validly existing against the Property at the time of this Order, shall attach to the sale proceeds received by the Receiver pursuant to the Private Sale Agreement; provided that nothing in this Order shall be deemed to reinstate any such lien, encumbrance, cost, claim or interest that has previously terminated or is not otherwise binding on the Receiver and/or the Estate.

Accordingly, it is **ORDERED, ADJUDGED** and **DECREED** that:

A.  The private sale of the Property to Mr. and Mrs. Seramur pursuant to the terms of the Private Sale Agreement is hereby **CONFIRMED** and **APPROVED**.

B.  The Receiver and Mr. and Mrs. Seramur are hereby authorized and directed to close the sale of the Property as provided in the Private Sale Agreement. Upon such closing, including the payment in full of the purchase price set forth in the Private Sale Agreement, except as provided in this Order or in the

Private Sale Agreement, Mr. and Mrs. Seramur shall hold good and clear title to the Property as against the world, free and clear of all liens, encumbrances, claims and interests of any kind.

C. In the event Mr. and Mrs. Seramur improperly fail to close their purchase of the Property as provided in the Private Sale Agreement, the Receiver shall retain their earnest money deposit plus any interest earned thereon as liquidated damages and their rights hereunder and to the Property shall terminate.

D. Other liens, encumbrances, costs, claims and interests, if any, validly existing against the Property at the time of this Order, shall attach to the sale proceeds received by the Receiver pursuant to the Private Sale Agreement, except as to such liens, encumbrances, costs, claims and interests as the Receiver is directed by this Order to satisfy at closing of the sale of the Property; provided that nothing in this Order shall be deemed to reinstate any such lien, encumbrance, cost, claim or interest that has previously terminated or is not otherwise binding on the Receiver and/or the Estate.

E. The Receiver is authorized to pay at closing of the sale of the Property, out of the proceeds of the sale of the Property, all liens, costs and encumbrances which, under the terms of the Private Sale Agreement are an obligation of the Seller (Receiver), including, without limitation, those liens, costs and encumbrances listed on Exhibit A to this Order. The Receiver is further

authorized to pay out of such proceeds all other liens, encumbrances, commissions, costs, or claims, if any, which have been incurred by the Receiver in connection with the maintenance and/or sale of the Property, including, without limitation, costs of publication, transfer taxes and recording fees, property taxes, inspection fees, title costs, association dues and accrued maintenance costs, whether or not such liens, costs and encumbrances are listed on such Exhibit A to this Order.

F.  The Receiver is further directed to place all net proceeds from the sale of the Property into Fifth Third Bank, Account Number 7165324455, pending further Order of this Court as to its disposition.

G.  The terms of Exhibit A to this Order, and the Hearing Order are hereby fully incorporated herein by reference; provided, however, that in the event of a conflict between the terms of this Order and any such Exhibit and/or Hearing Order, the terms of this Order shall govern.

H.  Neither, the Receiver, personally or in his capacity as Receiver, nor his attorneys, agents and representatives, nor the Estate, is liable for the payment of any commission in connection with the sale of the Property not specifically listed on Exhibit A to this Order.

I.  This Court shall have exclusive venue and jurisdiction to interpret this Order, the Hearing Order and the Private Sale Agreement, and to resolve disputes concerning, arising out of, or affecting this Order, the Hearing Order and the

Private Sale Agreement or their validity, enforcement and effect, and the Court retains jurisdiction for such purposes.

**DONE** and **ORDERED** in Jacksonville, Florida on this <u>19th</u> day of June 2009.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:

Counsel of Record
Receiver
McCafferty

## Exhibit A

### LIST OF LIENS, COSTS AND ENCUMBRANCES

*9867 Sawgrass Drive E, Unit D-9, Ponte Vedra Beach, Florida*
*Liens and Encumbrances to Be Discharged by Seller*

1. Broker's commission to RE/MAX Unlimited, Inc., of seven percent (7%) of the sales price actually paid by the Buyer.

2. Any and all other liens, encumbrances, charges and costs that the Seller is obligated to pay at closing.